In the Matter of the Estate of MARIUS MATHERON, Deceased.

Surrogate's Court, Nassau County, May 23, 1955.

*Freeman & Hyman* for Alma M. Bodnar, as executrix of Marius Matheron, deceased.

BENNETT, S. The attorneys for Alma M. Bodnar, an executrix, have presented to this court a proposed order to show cause and petition for a discovery proceeding for an examination of E. John Matheron, a coexecutor and his wife, Virginia Matheron, respecting " personal property consisting of shares of stock, bonds, certificates of indebtedness, stock issuance and purchasing rights, and cash approximating the value of $125,-000.00." The attorneys argued for the order ex parte in chambers May 18, 1955, and have submitted a letter of the same date stating authorities relied upon and contentions made by them in lieu of a formal memorandum, which letter is made a part of the record in this case.

The Surrogate's Court Act in section 205 provides that if the Surrogate is satisfied on the papers so presented that there are

reasonable grounds for inquiry, he must make an order accordingly. The attorneys for the petitioner assert that a refusal to issue the requested order to show cause as against E. John Matheron will be appealed by them to the Appellate Division. As this Surrogate declines to issue the requested order both in his discretion and as a matter of law, he feels it is proper in this memorandum to set forth his reasons therefore so the same may be before any court for review.

The refusal to entertain this application is made upon three grounds which will be set forth separately herein.

First, under the facts herein presented, an examination of E. John Matheron would not be proper for the reason that such person is a coexecutor and has custody of the property sought to be discovered even though he claims title to that property in an individual capacity.

Second, the question of title to the property in question may properly be determined and disposed of in the accounting proceeding herein and if the petitioner does not wish to have Mr. Matheron retain that property in his sole custody pending the accounting, the question of custody may be disposed of by a proceeding under section 228 of Surrogate's Court Act.

Third, the property in question is vaguely described in the petition and when the facts therein contained were supplemented by the statements of the attorney upon the argument in chambers, they revealed a situation in which the court would not have jurisdiction of a discovery proceeding even upon the consent of the parties.

As to the first ground for refusal, to wit, the fact that the respondent is a coexecutor, the law is in a confused and uncertain state. The attorney for the petitioner states that he has been unable to find any case directly in point. In favor of his position the court has found some indication that the courts have entertained such proceedings. In *Matter of Van Alstyne* (207 N. Y. 298), the Court of Appeals reversed the Appellate Division (147 App. Div. 411) and sustained a discovery proceeding by one executor against his coexecutrix. The issue discussed therein, however, is the nature of the evidence of the gift and not the status of the respondent as executrix. In *Matter of Seaman* (120 Misc. 531), decided by the Surrogate's Court, New York County in 1923, there is dicta that a discovery proceeding by two executors against a third executor would lie. However, the case before that court was in fact a proceeding for custody under section 228 of the Surrogate's Court Act.

However the understanding of this court as to the nature of a discovery proceeding and the status of an executor is such that the requested order appears unnecessary and improper. In law, executors constitute a single person and have a status similar to joint tenants, having joint and entire authority over the entire property (4 Jessup-Redfield on Surrogate's Law and Practice, § 2934). Disputes as to custody between executors may be adjudicated by a proceeding under section 228 of the Surrogate's Court Act.

The entity of executors has been recognized to the extent of dismissing an action at law in the Supreme Court in 1908 (*Peters* v. *Smith,* 60 Misc. 203, 205), upon the ground that it should have been brought in equity, quoting *Smith* v. *Lawrence* (11 Paige Ch. 206, 208–209) as follows: " ' In the common-law courts one executor or administrator cannot bring a suit against his coexecutor or coadministrator to recover a debt which was due from the latter to the testate or intestate, *for each has the same right to the possession of the fund which belongs to both as the representatives of the estate* of which they are joint trustees, and the effect of a common-law judgment in favor of one against the other would be to give the former the right to issue an execution and transfer the whole fund to his own exclusive possession; a court of equity, however, from its peculiar mode of administering justice, can settle the question as to the fact of indebtedness and as to the amount due from one of the executors to the estate of which both are trustees, whenever the decision of this question becomes necessary, *without changing the possession of the fund.* ' " (Emphasis supplied.)

It is recognized that this court has equity jurisdiction under section 40 of the Surrogate's Court Act and can settle questions of title between cofiduciaries in an accounting proceeding. (*Matter of Watson,* 215 N. Y. 209; *Matter of Henry,* 94 N. Y. S. 2d 720; Surrogate's Ct. Act, § 209; *Matter of Foss,* 282 App. Div. 509.)

A discovery proceeding, while it may involve a question of title, is primarily inquisitional and its aim is to bring the decedent's assets within the executor's domain. It does not reach a case where the executor has gained dominion and the only question is whether he has gained his dominion rightfully (*Matter of Heinze,* 224 N. Y. 1; *Matter of Erlanger,* 148 Misc. 339).

Referring to joint custody of property under the provisions of the Code of Civil Procedure similar to those of section 228 of the Surrogate's Court Act, the Surrogate's Court, New

York County in 1903, in *Matter of Freligh* (42 Misc. 11, 14), makes the following observation: '' This relief is claimed to be proper under section 2602 of the Code of Civil Procedure, as to directing joint custody or deposit of assets, and also under the general power to control executors as granted in section 2472. The general power of control ' must be exercised in the cases and in the manner prescribed by statute ' (Code Civ. Pro., § 2472), and I am not entirely clear that the summary remedy prescribed for the safekeeping of assets, concededly the property of the estate, is appropriate for the trial of an issue of ownership of property between one executor, claiming title as an individual, and his coexecutors. In any event, the remedy is discretionary, and where, as in this case, an accounting is pending in which such an issue can properly be disposed of (Code Civ. Pro., § 2731), the evidence having been nearly all taken, the more complete and deliberate remedy should be preferred.''

The above-cited cases and the theory underlying the same lead the court to the conclusion that the issue herein of the title to the money and stock held by E. John Matheron and claimed by him in his individual capacity should not be tried in a discovery proceeding or in a proceeding under section 228 of the Surrogate's Court Act but should be determined upon the accounting herein. The same conclusion appears to have been reached in Warren's Heaton on Surrogate's Courts (6th ed., Vol. 3, § 226), which reads in part: '' Similarly a dispute may arise between the legal representative of an estate and those interested in it with regard to the ownership of property. The representative may claim that certain property belongs to him. Those interested in the estate may contend that it belonged to the decedent. This dispute likewise must be determined by the surrogate. *This will be done usually upon the final accounting. Presumably this is the only time in which there can be a determination.* It would not seem that the provisions of section 206-a of the Surrogate's Court Act would apply to the claim of a legal representative.'' (Pp. 51, 52.) (Emphasis supplied.)

Similarly Dodge and Sullivan's '' Estate Administration and Accounting '' on pages 338 and 339 states: '' *Discovery.* Should assets of the estate be in the possession of *others than the fiduciary* * * * the fiduciary may institute a proceeding under *Section 205* of the Surrogate's Court Act ''. (Emphasis supplied.)

The above-discussed principles of law apply only to E. John Matheron, the executor, and not to his wife Virginia. The court

asked the attorneys for the petitioner at the hearing in chambers if they desired him to consider the application separately as to these two persons and was informed that they were not interested in a discovery proceeding against Virginia Matheron alone.

The second ground for denying the order to show cause is that even if a discovery proceeding against the coexecutor is permissible the court can see no useful purpose to be accomplished by the bringing of such a proceeding. The court has jurisdiction to determine the issues herein in an accounting proceeding. The doubt expressed in early cases upon this point was settled by the Court of Appeals in 1915 in *Matter of Watson* (215 N. Y. 209), when it said (p. 213): " Plainly the Surrogate's Court has jurisdiction to try and determine issues arising upon any contest respecting a debt alleged to be due by the accounting party to the decedent or by the decedent to the accounting party. With equal reason it should have jurisdiction to determine conflicting claims of ownership to personal property between an accounting party and his estate. The trial and determination of such issues falls far short of the exercise of general equitable jurisdiction, and we think that the statute was intended to confer jurisdiction in both classes of cases."

If there is any debt due from the executor to the testator, the executor must account for the same and include it in the credits and effects of the deceased in the same manner as if the money actually came through his hands (Surrogate's Ct. Act, § 203).

The liability to account is again recognized in *Matter of Henry* (94 N. Y. S. 2d 720, *supra*), decided by the Surrogate's Court, Erie County in 1950.

The only possible deterrent which may arise to petitioner by waiting until the accounting is the possibility that the coexecutor, E. John Matheron, may dispose of the assets in question and be unable to make any restitution to the estate if so directed upon the accounting. If that possibility is contemplated, petitioner has her remedy under section 228 of the Surrogate's Court Act to apply to establish joint custody of the property. Such a proceeding would not determine title but would arrange for custody of the disputed property until title could be determined upon the accounting.

The third ground for refusal to entertain this proceeding arises from matters presented to the court upon oral argument for the order to show cause, which facts unfortunately do not appear in the record of this application. Upon such application the court pointed out to counsel that the specification in the petition of " certain personal property consisting of shares of

stock, bonds, certificates of indebtedness, stock issuance and purchase rights and cash approximating the value of $125,000.00 " might be too indefinite and uncertain to specify the personal property as required in a discovery proceeding (*Matter of Lowe,* 148 Misc. 107).

In reply thereto counsel stated that the moneys in question were proceeds of checks drawn by E. John Matheron during the lifetime of decedent under a power of attorney and that the stock and other securities mentioned were shares of American Telephone & Telegraph Company and rights to purchase the same which were transferred under a power of attorney during decedent's lifetime. Upon these facts it would appear that no discovery proceeding would lie in this case either against E. John Matheron or his wife Virginia.

In dismissing a discovery proceeding concerning transfers knowingly made before death in *Matter of Landau* (163 Misc. 894), the court said (p. 896): " It is conceivable that in an accounting proceeding, where the rights of legatees will be presented directly for determination and where the court has plenary equity power (Compare *Matter of Raymond* v. *Davis,* 248 N. Y. 67, 72), petitioner or any legatee interested in the point may urge the correction of what petitioner asserts to be a fraudulent scheme on the part of respondent. Decision on the point must await formulation of that issue and the presentation of the alleged proof if the court shall then deem it proper."

In *Matter of Wilson* (284 App. Div. 1018, 1020), decided by the Fourth Department, November 10, 1954, the court said: " On the face of it, at least, the amounts represented by the checks are no part of the decedent's estate. They represent completed transactions long since past. If these transactions were tainted with fraud or undue influence the executor is not without a remedy — he may proceed by action. We do not think that a discovery proceeding is intended as a substitute for such a cause of action."

The decision in *Matter of Wilson* (*supra*), is of great weight because the parties consented to the trial of the issues before the Surrogate and the reversal by the Appellate Division indicates a lack of jurisdiction even on consent.

It would appear that the petitioner can try her claim for an accounting by the respondent as attorney in fact either in a separate action in the Supreme Court or by raising the issue upon the accounting. A discovery proceeding is definitely not a proper remedy.

The attorney for the petitioner has requested an order denying the issuance of the requested order to show cause so he may appeal therefrom. The same question has arisen in the estate of Herman M. Braloff in this court in which this court rendered decisions in writing dated January 11, 1955 and January 14, 1955. In those decisions the court held that in its opinion, the petitioner was not entitled to an order as a matter of right (*Matter of Cornell* v. *Delehanty,* 173 Misc. 483). However the court consented to put its refusal in order form so that it might be reviewed on appeal. The court is informed that the above matter has now been submitted to the Appellate Division, Second Department, for decision. While the court still is of the opinion that such an order is improper, it will make a similar order in the present case for the purpose of facilitating the review of this determination unless prior to the submission of such order for signature, a decision is rendered in the *Braloff* case having to do with the validity or propriety of this form of practice.

An order may be submitted as above indicated if the attorneys for the petitioner so desire.